AO 91 (Rev. 11/11) Criminal Complaint

U.S. DISTRICT COURT - N.D. OF N.Y.

**FILED**

JUN 02 2026

AT_____ O'CLOCK_____
John M. Domurad, Clerk - Plattsburgh

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| | ) |
| Walson TEGENIS, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |

Case No.   8:26-MJ-118 (GLF)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of May 31, 2026, in the county of Franklin in the Northern District of New York the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii) | The Defendant, knowingly and in reckless disregard of the fact that aliens have come to, entered, or remained in the United States in violation of law, did transport, move and attempt to transport and move, such aliens within the United States by means of transportation or otherwise in furtherance of such violation of law. |

This criminal complaint is based on these facts:
See attached affidavit.

☒     Continued on the attached sheet.

*Andrew Kraengel*   6/1/2026   3:13 PM
*Complainant's signature*

U.S. Border Patrol Agent Andrew L. Kraengel
*Printed name and title*

Attested to by the Affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date:  *June 2, 2026*

*Gary L. Favro*
*Judge's signature*

City and State:     Plattsburgh, New York

Hon. Gary L. Favro, U.S. Magistrate Judge
*Printed name and title*

*Continuation Sheet, United States v.* **Walson TEGENIS.**

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Andrew L. Kraengel, hereby depose and state under penalty of perjury:

1.    I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP) assigned to the Burke Border Patrol Station. I have been a law enforcement officer for CBP since 2011 beginning with the U.S. Border Patrol as an Agent assigned to Ajo Station in Arizona. In 2014, without a break in service I became a Customs and Border Protection Officer, assigned to the Buffalo, NY Port of Entry and later to the Massena, NY Port of Entry. In 2024, without a break in service, I reinstated with the U.S. Border Patrol.

2.    My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agent's authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Centers in Artesia, New Mexico & Glynco, Georgia in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3.    This affidavit is based in part on information provided to me by others and from law enforcement and immigration databases. It does not set forth all my knowledge about the investigation.

4.    I submit this affidavit in support of a criminal complaint charging defendant Walson TEGENIS with violating 8 U.S.C. § 1324(a)(1)(A)(ii), transporting aliens.

### PROBABLE CAUSE

5.    On May 31, 2026, at approximately 3:20 AM, Border Patrol Agents assigned to the Burke Border Patrol Station, while utilizing a service issued laptop, detected a blue crossover driving through the Burke Station's area of responsibility via electronic surveillance equipment. The crossover entered the town of Burke, NY on NY SR-11 at roughly 3:25 AM and turned north onto Jamison Line Rd, proceeding north towards the

*Continuation Sheet, United States v.* **Walson TEGENIS.**

US/Canada International Border. This area of Burke is a rural farming community and is frequently used for smuggling activity due to its remoteness, limited vehicle traffic, and multiple points of egress. Agents are familiar with most of the residents in the area and this vehicle was not one known to be from the area, specifically not one seen travelling in the area during the early morning hours.

6. Agents proceeded to the area and positioned their vehicles at three intersections with NY SR-11 where the crossover would likely exit the area. An unmarked K-9 unit traveled north on East Rd, which parallels Jamison Line Rd approximately one mile to the east. The agent was attempting to encounter the crossover on Trout River Rd, which runs perpendicular to East Rd, Jamison Line Rd, and Callahan Rd, which are the three most utilized roads in the area for smuggling activity. The agent encountered the crossover, which could now be identified as a blue Subaru Outback bearing MA license plates 6WJJ97, pulled to the side of the road completely blacked out, just west of Callahan Rd, on Trout River Rd.

7. As the Agent drove toward the Subaru he spotted at least four individuals running north toward the border. The Outback then turned on its lights and proceeded west on Trout River Rd. The Agent then passed the Outback as it travelled west. After traveling about one mile, the Agent could no longer see the Outback and turned around to see if it had also turned around. The agent was able to catch up to the Outback as it was turning south onto Jamison Line Rd. Suspecting that the driver of the Outback may have picked up other individuals that had crossed the border travelling south, the agent alerted the agents positioned on NY SR-11 that the Outback was travelling south towards NY SR-11.

8. When the Outback reached NY SR-11, the Agent positioned at the intersection pulled out behind the Outback as it turned east onto NY SR-11. Agents positioned at East Rd and NY SR-11, moved east and pulled to an elevated side of the road to illuminate the Outback as it passed by to see how many individuals were in the vehicle. This effort was unsuccessful, as the window tint on the back windows was too dark to see through. Agents could only see a front seat passenger. However, based on the suspicious activity on Trout River Rd, the early

*Continuation Sheet, United States v.* **Walson TEGENIS.**

morning hour and the vehicle being from out of the area, agents activated their emergency lights and sirens and executed a vehicle stop, just east of the Chateaugay Bridge in Chateaugay, NY.

9.     Agents approached the vehicle, identifying themselves as U.S. Border Patrol, and now observed the car to be beyond its safe operating capacity. There was one adult male in the front passenger seat and five female individuals in the backseat. Two of the females were sitting on the laps of the other three. One of the females sitting on laps was an 11-year-old. Agents asked the driver to roll the driver window down to which he initially did not respond at all. Agents asked the driver, later identified as Walson TEGENIS, who the individuals in the vehicle were and he responded that he was told that he was to bring four people to the border and pick four people up from the border, but when he got to the border there were six people looking to be picked up. Agents asked if he had been paid yet for picking the people up and he responded "No, not yet." For investigative purposes, agents asked TEGENIS to step out of the Outback and TEGENIS was detained in the back of a marked Border Patrol service vehicle. Agents then asked the other occupants in the vehicle to state their citizenship. Three of the female individuals in the backseat claimed to be Haitian citizens -- later identified as J.A., M.N.C., and S.C.C., -- and the male individual from the front seat, and the other adult and juvenile females in the back claimed to be from Colombia. The Columbians were a family of husband, wife and child, later identified as J.C.B.T., Y.A.G.R., and H.S.B.G. Agents then asked the passengers if they illegally crossed the border and got into Outback and all answered in the affirmative. Agents discovered large amounts of cash on each of the adults. Agents asked the individuals if that was the money they planned to use to pay the smugglers and they all answered in the affirmative. Agents then asked TEGENIS to state his citizenship and he claimed to be a citizen of Haiti.

10.     At that time, all occupants from the Outback were placed under arrest and transported to the Burke Border Patrol Station for further interviews and processing.

11.     At the station, Agents confirmed that all occupants of the vehicle were illegally present. Records checks on Walson TEGENIS revealed that he is a citizen of Hati and he arrived in the United States around November 17, 2023 at the Laredo Port of Entry. TEGENIS claimed asylum status and was released into the

*Continuation Sheet, United States v.* **Walson TEGENIS.**

U.S. TEGENIS currently has Temporary Protected Status in the United States. TEGENIS has a hearing before the Executive Office for Immigration Review (EOIR) on July 8, 2027.

12.    During the interview at the station Walson TEGENIS was issued *Miranda* warnings and agreed to talk to an Agent. During the interview, TEGENIS stated that he was called and was asked to pick up four people at 19 Booth Rd. Plattsburgh, NY (America's Best Value Inn). When he arrived, the location was switched to 574 Trout River Rd.. Burke, NY, which is located less than one half mile from the U.S. / Canada border. Once on Trout River Road he texted the person he was communicating with, and a group of six people came out of the woods and entered his vehicle. TEGENIS claimed that he did not know the six people that got into his vehicle. TEGENIS claimed that he was supposed to be paid a total of $1500 to pick up four people. He had a car seat in the vehicle because he claimed that one of the four people, he was supposed to pick up was a baby. TEGENIS had already been paid a total of $650 via two bank transfers, which he claimed were in the amounts of $250 and $400. The remaining balance, of the original $1500, was due once he was done driving.

## Conclusion

13.    Based on the foregoing, I respectfully request the Court issue the proposed complaint charging the defendant with transporting aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

*Andrew Kraengel*  6/1/2026  3:13 PM
Andrew L. Kraengel
United States Border Patrol

Attested to by the affiant in accordance with Rule 4.1
of the Federal Rules of Criminal Procedure.

Date: 6/2/26

Hon. Gary L. Favro
United States Magistrate Judge